The **TWIN WINTONS**

v.

**UNITED STATES.**

C.D. 4594; Court No. 72–5–01088.

United States Customs Court.
April 24, 1975.

Glad, Tuttle & White, Los Angeles, Cal. (Edward N. Glad, Los Angeles, Cal., of counsel), for plaintiff.

Irving Jaffe, Acting Asst. Atty. Gen. (David A. Ast and Frank J. Desiderio, New York City, trial attorneys), for defendant.

Lamb & Lerch, New York City (David A. Golden, New York City), amicus curiae.

RICHARDSON, Judge:

The merchandise in this case, described on the invoices as "Hillbilly Decanters" and tops and "Rebel Yell Horseman Decanters" and tops, and exported from Japan, was entered at the port of New Orleans, La., between July, 1969 and May, 1970, and classified in liquidation under TSUS item 533.71 as modified by T.D. 68–9 as nonbone chinaware decanters at the duty rate of 36 *per centum* or 31 *per centum ad valorem*, depending upon date of entry. The plaintiff-importer contends in this action that the imported merchandise should be classified under TSUS item 533.31 as modified by T.D. 68–9 as fine-grained stoneware decanters at the duty rates of 8 cents per dozen plus 20 *per centum ad valorem* or 7 cents per dozen plus 17 *per centum ad valorem*, depending upon date of entry.

The competing tariff provisions read:

[classified]

Articles chiefly used for preparing, serving, or storing food or beverages, or food or beverage ingredients:

\* \* \* \* \* \* \* \*

Of nonbone chinaware \* \* \*:

\* \* \* \* \* \* \*

Household ware not covered by item 533.63, 533.65, 533.66, 533.68, or 533.69:

533.71      \* \* \* decanters \* \* \* . . . . . . . . .   36% ad val.
[or]
31% ad val.

[claimed]

Articles chiefly used for preparing, serving, or storing food or beverages, or food or beverage ingredients:

\* \* \* \* \* \* \* \*

\* \* \* of fine-grained stoneware:

\* \* \* \* \* \* \*

Not available in specified sets:

533.31      \* \* \* decanters \* \* \* . . . . . . . . . .   8¢ per doz. pcs. + 20% ad. val.
[or]
7¢ per doz. pcs. + 17% ad. val.

And Headnotes 2(a), (c), (e), (g) and (i) of Part 2 of Schedule 5, TSUS, read:

2. For the purposes of the tariff schedules—

(a) a "*ceramic article*" is a shaped article having a glazed or unglazed body of crystalline or substantially crystalline structure, which body is composed essentially of inorganic non-metallic substances and either is formed from a molten mass which solidifies on cooling, or is formed and subsequently hardened by such heat treatment that the body, if reheated to pyrometric cone 020, would not become more dense, harder, or less porous, but does not include any glass article;

\* \* \* \* \* \* \* \* \* \*

(c) the term "*stoneware*" embraces ceramic ware whether or not glazed or decorated, having a fired body which contains clay as an essential ingredient, is not commonly white, will absorb not more than 3.0 percent of its weight of water, and is naturally opaque (except in very thin pieces) even when fully vitrified;

\* \* \* \* \* \* \* \* \* \*

(e) the terms "*chinaware*" and "*porcelain*" embrace fine-grained ceramic ware (other than stoneware), whether or not glazed or decorated, having a body which is white (unless artificially col-

ored) and will not absorb more than 0.5 percent of its weight of water; ·

\* \* \* \* \* \* \* \* \* \*

(g) the term *"nonbone chinaware"* embraces chinaware or porcelain other than bone chinaware;

\* \* \* \* \* \* \* \* \* \*

(i) the term *"fine-grained"*, as applied to ceramic wares, embraces such wares having a body made of materials any of which had been washed, ground, or otherwise beneficiated;

\* \* \* \* \* \* \* \* \* \*

———◆———

The record in the case consists of the testimony of two witnesses and four exhibits offered on plaintiff's behalf, and the testimony of three witnesses and two exhibits offered on defendant's behalf. And it was stipulated by the parties at the trial (1) that the imported merchandise is fine-grained ceramic ware, (2) that it is identical in composition and production, (3) that no color additives were used prior to the addition of any glaze in the production of the body of the merchandise, and (4) that the merchandise absorbs less than 0.5 per cent by weight of water when tested according to the procedures set forth in ASTM C373–56. Thus, the identity of the composition of the body of the imported decanters is the residual issue to be resolved in determining whether they should be classified as chinaware or stoneware.

On the matter of body composition Ross H. Winton, a sculptor employed by plaintiff, testified that plaintiff placed its order with the Japanese manufacturer for porcelain decanters to be made up from wax models which his brother designed, but instead agreed to accept stoneware decanters in an off-white color when it developed that the manufacturer indicated that it was not equipped to produce porcelain because it lacked the proper kilns and offered to supply stoneware decanters as a substitute. The witness stated that plaintiff did not specify what materials were to be used in the production of the decanters, and that he did not personally know what went into the composition of the imported decanters (R. 22).

Also on the matter of body composition Lewis F. West, a chemist and laboratory supervisor in the employ of United States Testing Company, testified concerning the results of tests made on a sample "Hillbilly" decanter sent to his company by the plaintiff. Mr. West testified that in order to determine whether the sample was porcelain or stoneware in the light of tariff criteria he received from the Customs Laboratory at Terminal Island, California, which defined stoneware as "white, opaque pottery, glazed or unglazed, with a maximum of 3 percent water absorption" and defined porcelain as "white, translucent pottery, glazed or unglazed, with a maximum of ½ percent water absorption", he conducted a physical examination, made a water absorption test, and had a major metals content test performed by a company branch laboratory using emission spectrophotography. He described emission spectrophotography as consisting "of taking a . . . sample and putting it on the surface of a carbon electrode . . . into contact so as to form an arc. Now, this arc is extremely hot and volatilizes the sample. The light given off would be characteristic of the materials in the sample because of the atomic absorption of the different materials." On the basis of his examination the witness stated that he found the body of the decanter to be clay, opaque, and off-white in color. He said that the water absorption test

showed that the decanter absorbed less than 0.3 percent of its weight in water. The major metals test revealed that the sample contained 29% silicon, 14% aluminum, 1.7% calcium, 3% potassium, and 1.7% sodium. Mr. West testified that all other metals present were only in trace amounts (i. e., twenty parts per million or less). He stated that clay is composed of metallic silicate, mostly aluminum, and that the major metals test results conformed to the definition of clay. The witness concluded that the sample was stoneware because of the opacity of the material. He said you cannot see through opaque material as light is not transmitted through it, while material that is translucent transmits enough light for a person to make out a silhouette or outline.

The testimony of other witnesses in the case does not deal with the imported merchandise *per se*. In general, the testimony of these witnesses concerns itself with characteristics of various types of clay used in making chinaware and stoneware by companies with which the witnesses were associated or employed.

Harry W. Thiemecke, former ceramic engineer and director of research of Homer Laughlin China Company prior to retirement in 1972, testified that ball clays have significant amounts of iron or titanium and fire off-white; that china clay (kaolin) has less than one percent of iron or titanium and fires white. Fire clay, depending upon the amount of iron present in the clay would fire ivory, or tan or red in an oxidizing condition, or on the gray side in a reducing condition. On cross-examination he stated that plaintiff's exhibit 1 was opaque, and not translucent.

Clifford R. Stowell, Jr., vice president of operations of Western Stoneware Company in Monmouth, Ill., whose principal experience was in management and supervision and not in the technology of production, was of the opinion that the only true stoneware is that which is produced from natural clay bodies and not from prepared bodies. However, the witness stated that he was not an expert on body composition of stoneware because he had not worked in a ceramics laboratory where bodies and glazes are developed.

Edith Heath, founder of Heath Ceramics which currently employs 50 people in the manufacture of stoneware, dinnerware, casseroles, ashtrays and architectural tiles using a one body formula, testified that her specialty is body composition. She said that stoneware is manufactured from fire clays and iron-bearing ball clays and not from white clays, and that she has never made stoneware with an off-white body, nor had she ever seen a white stoneware body. She also stated that porcelain or china was not necessarily translucent, that she has made porcelain that was both translucent and opaque; that translucency [caused by fineness of grain of material] depends upon the thinness and porosity of the ceramic ware; and that opacity in stoneware is due to the coarseness of the grind of the particles.

Plaintiff argues that the major distinction between chinaware and porcelain on the one hand and stoneware on the other is that the body of the former is translucent while the body of the latter is opaque, that the imported decanters fall within the statutory definition of stoneware because they are opaque, and that an inspection of the body of the decanter reveals that it has not been fired so that the glass formers have been fused to a state of translucency as with chinaware.

Defendant argues, among other things, that plaintiff has failed to establish that clay is an essential ingredient of the imported decanters.

*Amicus curiae* argues, among other things, that "if the article has a white body then it is not 'stoneware' ".

■ In deciding whether the imported ceramic articles, decanters, are chinaware or stoneware the court must be guided by the express language of the tariff schedules defining chinaware and stoneware. *Morganite, Inc.* v. *United States*, 62 Cust.Ct. 387, C.D. 3778

(1969). Also, both parties agree that the classification of the decanters is controlled by the statutory definitions contained in headnotes to Schedule 5, Part 2.

The stipulation of the parties set out in the beginning of this opinion covers the respects in which the two articles are similar. The ways in which they differ are as follows:

| Chinaware | Stoneware |
| --- | --- |
| white (unless artificially colored) | —not commonly white<br>—has clay as an essential ingredient<br>—is opaque |

———◆———

In the opinion of the court the color of the imported decanters is not determinative of whether or not they are susceptible to classification under item 533.31 as claimed. The phrase "not commonly white" appearing in item 533.31 does not preclude the possibility that stoneware bodies may fire white, while recognizing that the bulk of articles responding to the designation "stoneware" usually possess non-white bodies. Under the TSUS clay is an essential ingredient of stoneware articles although it doesn't have to be an ingredient of other types of ceramic ware. See *Morganite, Inc.* v. *United States, supra.* And, on the basis of evidence in this record whether or not a stoneware body fires white would depend upon the presence or absence of iron or titanium in the clay of which it is composed. Thus, the color of a stoneware body would appear to be a function of the potter's intention (as manifested through ingredient control) rather than an innate characteristic of his product. And this is apparently reckoned with in the statutory language "not commonly white", which certainly leaves the door open for the admittance of white-bodied stoneware, whether a visual examination leads one person to describe an article as "white" or "off-white".

The next question before the court is whether plaintiff has shown that clay is an essential ingredient in the imported decanter. The plaintiff produced no evidence as to how the imported decanters were manufactured or out of what material or materials they were manufactured. It relied upon the test results discussed in the testimony of the witness West and reflected in the laboratory report received in evidence as exhibit 2, which shows the main part of the body to be clay material, which is some evidence that clay is an essential ingredient of the decanter.

All of the witnesses, for both the plaintiff and the defendant, conceded that exhibit 1 is opaque.

The stipulation of the parties together with the evidence showing the imported merchandise to have clay as an essential ingredient, to be off-white and to be opaque brings it within the tariff definition of stoneware in Schedule 5, Part 2, and it should be classified as claimed under TSUS item 533.31 as modified by T.D. 68–9 as fine-grained stoneware decanters.

The court concludes that the plaintiff has established that the classification of the imported merchandise as chinaware was not proper. By distinguishing on the record the difference between chinaware or porcelain and stoneware, and establishing that the imported merchandise is stoneware, the plaintiff has also negatived the possibility of its being chinaware.